IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LYNETTE S. BARTON                                                                    PLAINTIFF

               v.                    CASE NO.: 12-2079

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Lynette Barton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability and disability income benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**   **Procedural Background:**

Plaintiff filed her application for DIB on March 15, 2005, alleging an onset date of June 1, 2003, due to fibromyalgia, degenerative disk disease, cardiac dysrhythmia, shortness of breath, narcolepsy, and depression. Tr. 58-60, 75-76, 85-91, 100-101, 110-118, 124-130, 133. An unfavorable decision was entered on January 8, 2008, but was reversed and remanded by this Court on August 15, 2011. Tr. 3II-3NN, 26-37. A supplemental hearing was held on January 18, 2012. Tr. 633-660. Plaintiff was present and represented by counsel.

At this time, Plaintiff was 47 years of age and possessed a high school education with one semester of college credit. Tr. 130, 403, 636. She had past relevant work ("PRW") experience as a waitress, receptionist, automation clerk, and data entry clerk. Tr. 67-74, 119-123, 451-452.

On February 16, 2012, the ALJ found that Plaintiff's rapid monomorphic ventricular tachycardia, fibromyalgia syndrome, narcolepsy, degenerative disk disease ("DDD") of the cervical spine, DDD of the lumbar spine, obesity, and major depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 3F-3J. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, involving occasional climbing of stairs and ramps, balancing, crawling, kneeling, crouching, stooping, and working overhead; no climbing of ladders, ropes, or scaffolds; and, no exposure to hazards including unprotected heights and heavy moving machinery. Tr. 3J-3S. It was further determined that Plaintiff could frequently finger and handle, and would need to shift between sitting and standing every hour. Mentally, the ALJ found Plaintiff would be limited to work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was learned and performed by rote with few variables and little judgment; and, the supervision required was simple, direct, and concrete. Tr. 3J-3S. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a document preparer, addresser, zipper trimmer machine operator, and lens inserter. Tr. 3S-3T.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision.

II. **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's treatment of the evidence concerning Plaintiff's fibromyalgia and narcolepsy. "Fibromyalgia is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL, *Fibromyalgia*, http://www.merckmanuals.com/ professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_d isorders/fibromyalgia.html?qt=fibromyalgia&alt=sh (last accessed August 5, 2013). Any fibromuscular tissues may be involved, but fibromyalgia is especially prevalent in the occiput, neck, shoulders, thorax, low back, and thighs. *Id*. The symptoms of fibromyalgia are typically generalized, and can be exacerbated by environmental or emotional stress, poor sleep, trauma, exposure to dampness or cold, or by a physician who implies that the disorder is "all in the head." *Id*. There are, however, no laboratory tests for the presence or severity of fibromyalgia, and treatment includes exercise, local heat, stress management, drugs to improve sleep, and analgesics. *Id*.

In a contradictory opinion, the ALJ dismissed Plaintiff's fibromyalgia due "a lack of persistent and supporting physical examination findings", lack of evidence showing radiculopathy, lack of diagnostic imaging reports , and the conservative nature of the treatment prescribed. However, he also noted, as do we, "numerous complaints consistent with fibromyalgia" and "numerous complaints of weakness, joint and muscle pain, fatigue, and muscle spasms." Tr. 9-11, 158-160, 277-279, 290-309, 379-380, 400, 411-416, 501-502, 507-508, 517-518, 522, 564-566, 587-632. Further, he also credited the physical exams revealing trigger point tenderness, range of motion deficits, and muscular pain, all clear indications of the severity of Plaintiff's condition. This contradiction leaves the undersigned with no other choice than to remand the case for further consideration.

The ALJ's dismissal of Plaintiff's complaints based on the conservative nature of her treatment is also bothersome to the undersigned. The ALJ felt that her lack of surgical intervention greatly undermined her credibility. However, fibromyalgia is believed to amplify "painful sensations by affecting the way [the] brain processes pain signals." MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, *Fibromyalgia*, http://www.mayoclinic.com/health/fibromyalgia/DS00079 (Last accessed August 6, 2013). And, it is common for fibromyalgia symptoms to begin *after* a physical trauma, such as surgery or infection.[1]  *Id*. Given that surgery was not recommended by Plaintiff's doctors, we can not say

---

[1] We can also discern no evidence to indicate that surgery was a treatment option recommended by Plaintiff's treating physicians.

AO72A
(Rev. 8/82)

a lack of surgical intervention, in this case, is grounds for a denial of benefits. Plaintiff appears to have followed the course of treatment prescribed by her doctors.[2]

The absence of objective tests to support Plaintiff's complaints of pain is also not particularly significant given that she was diagnosed with fibromyalgia. As previously mentioned, it is that lack of objective evidence that lends itself to a diagnosis of fibromyalgia. There is, however, MRI evidence that documents a fairly prominent right extradural defect at the C5-6 level with some associated disc bulge that abuts the cervical cord and right neural foraminal narrowing at C5-6 level. Tr. 323. This evidence tends to support Dr. Deneke's and Rippy's assessment of joint precautions to include limitations regarding Plaintiff's ability to reach in all directions, including overhead. Tr. 9-11, 158-160. These limitations were improperly dismissed by the ALJ and led to an unsupported conclusion that Plaintiff could occasionally reach overhead. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

Likewise, it appears that the ALJ did not properly consider the combined effects of Plaintiff's narcolepsy and fibromyalgia. *See Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000) (Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling). Narcolepsy is a "chronic sleep disorder characterized by overwhelming daytime drowsiness and sudden attacks of sleep." MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, *Narcolepsy,* http://www.mayoclinic.com/health/narcolepsy/DS00345 (Last accessed

---

[2]Although the ALJ fails to note this, the record does indicate that Plaintiff had undergone both trigger point injections and nerve blocks resulting in a limited decrease in her symptoms. Tr. 379.

August 6, 2010). And, as previously mentioned, fibromyalgia is exacerbated by poor sleep. It is quite possible that the combination of the two could be more severe than the impairments considered individually. Accordingly, on remand, the ALJ is directed to develop the record further regarding the connection between Plaintiff's narcolepsy and fibromyalgia, and to obtain the assessment of a specialist who can opine regarding the combined effects of these disorders on Plaintiff's ability to perform work-related activities on a daily basis.

The evidence also reveals that "sleep attacks" continued to be a problem associated with Plaintiff's narcolepsy as late as June 2009. Tr. 522. And, we note that many of the medications prescribed to treat her fibromyalgia pain, namely Hydrocodone and Flexeril, also cause drowsiness and/or decreased alertness. Clearly, this could exacerbate her existing problems with daytime somnolence and eliminate her ability to work near machinery of any type, including assembly line type operations.[3] Further, the undersigned is concerned that it would also limit her ability to keep on pace and to sustain the necessary attention and concentration to perform work as assigned. In fact, Dr. Patricia Walz indicated that Plaintiff's narcolepsy would result in difficulty with tasks of sustained attention and moderate difficulties understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; and, interacting appropriately with the public, co-workers, and supervisors. Tr. 407. Accordingly, remand is also necessary to allow the ALJ to reevaluate the limitations imposed by Plaintiff's narcolepsy and the medications prescribed to treat her pain and fibromyalgia.

---

[3] In her assessment, Dr. Rippy noted "patient can fall asleep and collapse without warning." Tr. 9-11.

**IV.    Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of August 2013.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)